IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    3:17-cv-00794-BR

        Plaintiff,                        OPINION AND ORDER

v.

WILLIAM C. THOMPSON; MINHTAM
THOMPSON; LITECLAY, INC.;
MERDO, INC.; BRANCETON, INC.;
and DECORATIVE METAL
SERVICES, INC.,

        Defendants.


BROWN, Senior Judge.

     This matter comes before the Court on Defendant William C.
Thompson's Amended Motion (#76) to Compel the Production of
Documents and Second Motion (#82) to Compel the Production of
Documents.  For the reasons that follow, the Court **DENIES**
Defendant's Motions.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, the parties' materials filed related to William Thompson's Motions to Compel, and the parties' materials filed related to Plaintiff's Motion (#70) for Partial Summary Judgment incorporated by reference in the materials related to the Motions to Compel.

On June 21, 1995, David Rogers[1] "filed Articles of Incorporation with the Oregon Secretary of State to create [Defendant] Liteclay, Incorporated." Compl. at ¶ 30.

On June 27, 1995, Ronald Ford[2] "filed Articles of Incorporation with the Oregon Secretary of State to create [Defendant] Merdo, Inc." Compl. at ¶ 32.

Rogers and Ronald Ford were, in fact, homeless men whom William Thompson allegedly "caused to set up" Liteclay and Merdo "on [William] Thompson's behalf." Compl. at ¶¶ 31, 33.

On June 29, 1995, Lee Langan[3] transferred property at 24000 S.W. Hillsboro Highway, Newberg, Oregon, 97132 (Newberg Property), to Defendants Liteclay and Merdo, Inc., as tenants in common. The Warranty Deed was recorded in the Washington County Clerk's Office on July 31, 1995. Liteclay and Merdo are the

---

[1] Rogers is not a party to this action.

[2] Ronald Ford is not a party to this action.

[3] Langan is not a party to this action.

present owners of the Newberg Property.

On December 29, 1995, Liteclay and Merdo "purportedly granted a Trust Deed on the Newberg Property in favor of [Defendant] Branceton[, Inc.,] as the beneficiary. The Trust Deed purportedly secured repayment of a loan of $1,858,000." Compl. at ¶ 34. Kelly Ford, an attorney "engaged" by William Thompson, signed the Trust Deed on behalf of Liteclay and Merdo as Vice President of each corporation. Decl. of Dylan Cerling, Ex. B at 3. The Trust Deed was recorded in the Washington County Clerk's Office on December 29, 1995.

William Thompson concedes the transaction that occurred on December 29, 1995, was a false mortgage created by him. Specifically, William Thompson agrees "Kelly Ford was used to pursue a sham cloud on the title of the property subject to this litigation. There was no legitimate basis for the underlying debt. This was done in the name of a sham corporation, Branceton, Inc."

William Thompson and Minhtam Thompson resided at the Newberg Property from 1995 through 2003. Their children "presently reside" at the property.

On September 4, 2007, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004, 2006,

and 2013.

On September 7, 2007, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004. The Notice of Federal Tax Lien "named Liteclay and Merdo as [William] Thompson's nominees with respect to the Newberg Property." Compl. at ¶ 47.

On June 24, 2011, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1996-2004.

On June 24, 2011, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004, 2006, and 2013.

On February 14, 2013, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien concerning certain unpaid [federal-tax] assessments" for tax years 1996-1998, 2006, and 2013. The Notice of Federal Tax Lien "named Liteclay and Merdo as Thompson's nominees with respect to the Newberg Property." Compl. at ¶ 48.

On August 3, 2015, a duly authorized delegate of the
Secretary of the Treasury recorded in the Washington County
Clerk's Office a Notice of Federal Tax Lien concerning certain
unpaid [federal-tax] assessments" for tax years 2006 and 2013.

On May 22, 2017, Plaintiff filed a Complaint in this Court
against William Thompson; Minhtam Thompson; Liteclay, Inc.;
Merdo, Inc.; Branceton, Inc.; Decorative Metal Services, Inc.;
and Washington County, Oregon, seeking a judgment against William
Thompson for his unpaid federal-tax liabilities "[i]ncluding
penalties and interest."  Plaintiff also seeks a "determination"
that William Thompson is the true owner of the Newberg Property
or, in the alternative, that William Thompson is the co-owner of
the Newberg Property.

On July 17, 2017, the Court entered default against
Defendant Decorative Metal Services.

On July 21, 2017, the Court entered an Order Approving
Stipulation Between United States and Washington County in which
Washington County was "excused from any further participation in
this case."

On July 24, 2017, the Court entered default against
Defendant Branceton, Inc.

On April 23, 2018, William Thompson filed a Motion (#73) to
Compel the Production of Documents.

On April 30, 2018, William Thompson filed an Amended Motion

(#76) to Compel the Production of Documents that superseded his initial Motion (#73) to Compel.

On May 7, 2018, William Thompson filed a Second Motion (#82) to Compel the Production of Documents.

The Court took William Thompson's Amended Motion and Second Motion to Compel under advisement on May 14, 2018.


## WILLIAM THOMPSON'S AMENDED MOTION (#76) TO COMPEL THE PRODUCTION OF DOCUMENTS

In his Amended Motion to Compel William Thompson seeks an order requiring Plaintiff to produce:

1. All tax returns relating to William C. Thompson for the 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2006 tax years that were prepared and/or filed by the Internal Revenue Service . . . includ[ing] substituted and amended returns;

2. All documents that show the stopping and/or prevention of collection activities at any time during the relevant years concerning the relevant tax years;

3. Documents explaining why the collection modules were reinstated prior to the required waiting periods; and

4. Any and all documents showing nullification or cancellation of levies and/or lien notices during any alleged collection period tolling during the relevant years.

For each of these requests William Thompson asserts these documents are relevant because "[t]he returns . . . set the date of assessment.  Consequently they will establish the start date

of the collections period.  If that date is more than ten years prior to the filing of this suit, this suit must be dismissed [as untimely]."  William Thompson's Amended Mot. to Compel at 7. Plaintiff asserts in its Response that William Thompson's requests for production are unduly burdensome and overbroad and based on "meritless legal theories asserting that the United States did not timely file the complaint."  Pl.'s Resp. at 6. Plaintiff also notes even though William Thompson's requests are irrelevant, Plaintiff has already reviewed and produced thousands of pages of documents in response to his requests.

## I.    The Law

26 U.S.C. § 6502(a)(1) provides the United States must file an action to collect federal income-tax liabilities "within 10 years after the assessment of the tax."  William Thompson asserts in his Amended Motion to Compel that he "filed federal income tax returns for the years 1999-2004 on April 13, 2007[,]" and those returns "constituted self-assessments as of the same date." Plaintiff filed this action to collect William Thompson's federal income-tax liabilities for those years on May 22, 2017, which is more than ten years after April 13, 2007.  According to William Thompson, therefore, this action to collect his federal income-tax liabilities is untimely filed.

The Internal Revenue Code defines "assessment" within the meaning of § 6502(a)(1) as the "recor[d] [of] the liability of

the taxpayer in the office of the Secretary in accordance with
rules or regulations prescribed by the Secretary."  26 U.S.C.
§ 6203.  "The assessment shall be made by recording the liability
of the taxpayer in the office of the Secretary in accordance with
rules or regulations prescribed by the Secretary."  26 U.S.C.
§ 6203.  An "assessment" as used in the Internal Revenue Code is
a "'recording' of the amount the taxpayer owes the Government."
*Hibbs v. Winn*, 542 U.S. 88, 100 (2004)(quoting 26 U.S.C. § 6203).
The assessment is the official record of the amount of a
taxpayer's tax liability.  *Cohen v. Gross*, 316 F.2d 521, 522–23
(3d Cir. 1963).  The Supreme Court explained as early as 1976
that "[t]he 'assessment,' essentially a bookkeeping notation, is
made when the Secretary or his delegate establishes an account
against the taxpayer on the tax rolls."  *Laing v. United States*,
423 U.S. 161, 170 n.13 (1976)(citing 26 U.S.C. § 6203).  The
assessment "consists of no more than the ascertainment of the
amount due and the formal entry of that amount on the books of
the Secretary."  *United States v. Dixieline Fin., Inc.*, 594 F.2d
1311, 1312 (9th Cir. 1979).  *See also United States v. Hunter
Engineers & Constructors, Inc.,* 789 F.2d 1436, 1436 n.1 (9th Cir.
1986)(same).

Courts that have addressed the issue have held taxes are not
assessed for purposes of § 6502 when the taxpayer files his
return, but instead the assessment of federal tax liability by

the IRS "starts the running of" the ten-year limitations period.

*Remington v. United States*, 210 F.3d 281, 284 (5ᵗʰ Cir. 2000).

In *Remington* the plaintiff asserted the IRS did not initiate a timely collection of his federal tax liability.  The plaintiff asserted his taxes "were 'assessed' when the return was filed," which, according to the plaintiff, was more than ten years before the United States initiated the action to collect the plaintiff's tax liability.  The Fifth Circuit rejected the plaintiff's assertion:

> [I]t is true that the filing of a return starts
> the running of the three-year period within which
> the IRS can *assess* taxes, I.R.C. § 6502(a)(1)
> makes clear that it is the "assessment" itself
> that, once made, [that] starts the running of the
> ten-year period within which the IRS can commence
> efforts to collect an assessed tax.  The law is
> well established that the filing of a return does
> not constitute the assessment of the tax:  "The
> 'assessment,' essentially a bookkeeping notation,
> is made when the Secretary or his delegate
> establishes an account against the taxpayer on the
> tax rolls."

*Id*. (quoting *Laing*, 423 U.S. at 170 n.13).

Similarly, in *United States v. Bishop* the plaintiff asserted the date on which the plaintiff filed his tax return "was the 'assessment' that triggered the ten-year statute of limitations." 570 F. App'x 224, 226 (3d Cir. 2014).  The Third Circuit rejected the plaintiff's argument:

> Bishop's final argument is that the
> self-assessment on his filed return triggered the
> ten-year statute of limitations.  A "Self-
> Assessment" is a term used for when a taxpayer

submits documentation of his or her own tax liability, versus when the Secretary determines a taxpayer's liability. *See Kahn v. United States*, 753 F.2d 1208, 1213 (3d Cir.1985)(stating that a self-assessment is in reference to "the amount of tax shown on the return"); 26 U.S.C. § 6201(a)(1)(distinguishing between the taxes assessed by the IRS and the taxes listed on the taxpayer's return). The ability for taxpayers to indicate their own tax liability is "largely the basis of our American scheme of income taxation. The purpose is . . . to get [tax information] with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Comm'r v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944). A self-assessment is completed and submitted by the taxpayer as part of the filing process. *See Jenney v. United States*, 755 F.2d 1384, 1386 (5th Cir. 1985)(referencing that the term "self-assessment" is the amount of tax liability reported on the face of a taxpayer's return). The filing of a tax return is not the same as the assessment of the tax. Finally, "assessment" as referred to in the Internal Revenue Code refers to the Commissioner's final assessment, not the taxpayer's self-assessment.

* * *

Bishop's claim that the self-assessment date should control the statute of limitations is unsupported by the Internal Revenue Code.

*Id*. at 227-28 (citations omitted).

## II. Analysis

The Court adopts the reasoning of *Remington* and *Bishop* and concludes the taxpayer's filing of a return does not constitute the assessment of the tax within the meaning of § 6502 and does not begin the running of the ten-year limitations period. The IRS's assessment of an individual's federal tax liability starts

the running of the ten-year period within which the IRS can commence efforts to collect an assessed tax.

Here the record reflects the earliest assessments of William Thompson's federal-tax liability were made by the IRS on May 28, 2007. As noted, this action was filed on May 22, 2017. Thus, this action was filed within the ten-year limitations period. The Court, therefore, concludes William Thompson has not established the documents he requests are relevant to this matter. Moreover, Plaintiff has already spent significant time and effort searching for and producing documents pertaining to William Thompson. Federal Rule of Civil Procedure 1 provides the Rules of Civil Procedure, including those governing discovery, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Similarly, the Advisory Committee Notes to Federal Rule of Civil Procedure 26 state "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." The Court concludes Plaintiff has established the discovery that William Thompson seeks in his Amended Motion to Compel would not assist the Court or the parties in securing the just, speedy, and inexpensive resolution of this matter and William Thompson's requested discovery is not proportional to the relevance of the

materials sought by him.

Accordingly, the Court **DENIES** William Thompson's Amended Motion to Compel.


### WILLIAM THOMPSON'S SECOND MOTION (#82) TO COMPEL THE PRODUCTION OF DOCUMENTS

In his Second Motion to Compel William Thompson seeks an order requiring Plaintiff to produce

    1.    Any statutes, regulations, rules, policies. procedures, directives, instructions, or any other writing in any format that instructs, encourages, or allows the Internal Revenue Service or any of its staff to lie about, misconstrue, misrepresent, misinterpret, misquote, fabricate, or omit facts, evidence, and/or legal principles; alter or falsify transcripts, transcript entries, witness statements, IRS staff statements, and activity reports; either internally, to counsel, or to the public in the course of its duties and/or activities and/or provide immunity for such actions;

    2.    Any statutes, regulations, rules, policies, procedures, directives, instructions, or any other writing in any format that instructs, encourages, or allows the Internal Revenue Service or any of its staff to subpoena records or information about the taxpayer or third parties without the knowledge of the taxpayer or third party; and

    3.    Any statutes, regulations, rules, policies, procedures, directives, instructions, or any other writing in any format that instructs, encourages, or allows the Internal Revenue Service or any of its staff to disparage, suppress, or obstruct any right or privilege of the taxpayer under the United States Constitution.

Plaintiff notes in its Response that William Thompson's Second Motion to Compel is premature; his request essentially asks Plaintiff to perform legal research for him; and, in any event, there are not any documents that purportedly permit the IRS or its employees to lie, to falsify evidence, or to violate taxpayers' constitutional rights.

Plaintiff notes William Thompson served his Third Request for Production of Documents on April 9, 2018. Federal Rule of Civil Procedure 34(b)(2)(A) permits a party with 30 days to respond to requests for production. Plaintiff, therefore, had until May 9, 2018, to respond to William Thompson's request. William Thompson filed his Second Motion to Compel on May 7, 2018. Plaintiff served its response to Plaintiff on May 9, 2018. William Thompson's Second Motion to Compel, therefore, is premature. Nevertheless, even if William Thompson's Second Motion was timely, Plaintiff has adequately responded to William Thompson's Second Motion by stating there are not any documents that purportedly permit the IRS or its employees to lie, to falsify evidence, or to violate taxpayers' constitutional rights.

Accordingly, on this record the Court **DENIES** William Thompson's Second Motion to Compel the Production of Documents.


## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Amended

Motion (#76) to Compel the Production of Documents and Second

Motion (#82) to Compel the Production of Documents.

IT IS SO ORDERED.

DATED this 13th day of June, 2018.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge