IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          3:17-cv-00794-BR

      Plaintiff,          OPINION AND ORDER

v.

WILLIAM C. THOMPSON; MINHTAM
THOMPSON; LITECLAY, INC.;
MERDO, INC.; BRANCETON, INC.;
and DECORATIVE METAL
SERVICES, INC.,

      Defendants.


**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff's Motion (#70) for Partial Summary Judgment on William Thompson's Tax Liabilities.  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiff's Complaint and the parties' materials filed related to Plaintiff's Motion for Partial Summary Judgment.

On June 21, 1995, David Rogers[1] "filed Articles of Incorporation with the Oregon Secretary of State to create [Defendant] Liteclay, Incorporated." Compl. at ¶ 30.

On June 27, 1995, Ronald Ford[2] "filed Articles of Incorporation with the Oregon Secretary of State to create [Defendant] Merdo, Inc." Compl. at ¶ 32.

Rogers and Ronald Ford were, in fact, homeless men whom William Thompson allegedly "caused to set up" Liteclay and Merdo "on [William] Thompson's behalf." Compl. at ¶¶ 31, 33.

On June 29, 1995, Lee Langan[3] transferred property at 24000 S.W. Hillsboro Highway, Newberg, Oregon, 97132 (Newberg Property), to Defendants Liteclay and Merdo, Inc., as tenants in common. The Warranty Deed was recorded in the Washington County Clerk's Office on July 31, 1995. Liteclay and Merdo are the present owners of the Newberg Property.

On December 29, 1995, Liteclay and Merdo "purportedly granted a Trust Deed on the Newberg Property in favor of

---

[1] Rogers is not a party to this action.

[2] Ronald Ford is not a party to this action.

[3] Langan is not a party to this action.

[Defendant] Branceton[, Inc.,] as the beneficiary.  The Trust Deed purportedly secured repayment of a loan of $1,858,000."  Compl. at ¶ 34.  Kelly Ford, an attorney "engaged" by William Thompson, signed the Trust Deed on behalf of Liteclay and Merdo as Vice President of each corporation.  Decl. of Dylan Cerling, Ex. B at 3.  The Trust Deed was recorded in the Washington County Clerk's Office on December 29, 1995.

William Thompson concedes the transaction that occurred on December 29, 1995, was a false mortgage created by him.  Specifically, William Thompson agrees "Kelly Ford was used to pursue a sham cloud on the title of the property subject to this litigation.  There was no legitimate basis for the underlying debt.  This was done in the name of a sham corporation, Branceton, Inc."

William Thompson and Minhtam Thompson resided at the Newberg Property from 1995 through 2003.  Their children "presently reside" at the property.

On September 4, 2007, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004, 2006, and 2013.

On September 7, 2007, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County

Clerk's Office a Notice of Federal Tax Lien concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004. The Notice of Federal Tax Lien "named Liteclay and Merdo as [William] Thompson's nominees with respect to the Newberg Property." Compl. at ¶ 47.

On June 24, 2011, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1996-2004.

On June 24, 2011, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien "concerning certain unpaid [federal-tax] assessments" for tax years 1999-2004, 2006, and 2013.

On February 14, 2013, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien concerning certain unpaid [federal-tax] assessments" for tax years 1996-1998, 2006, and 2013. The Notice of Federal Tax Lien "named Liteclay and Merdo as Thompson's nominees with respect to the Newberg Property." Compl. at ¶ 48.

On August 3, 2015, a duly authorized delegate of the Secretary of the Treasury recorded in the Washington County Clerk's Office a Notice of Federal Tax Lien concerning certain

unpaid [federal-tax] assessments" for tax years 2006 and 2013.

On May 22, 2017, Plaintiff filed a Complaint in this Court against William Thompson; Minhtam Thompson; Liteclay, Inc.; Merdo, Inc.; Branceton, Inc.; Decorative Metal Services, Inc.; and Washington County, Oregon, seeking a judgment against William Thompson for his unpaid federal-tax liabilities "[i]ncluding penalties and interest." Plaintiff also seeks a "determination" that William Thompson is the true owner of the Newberg Property or, in the alternative, that William Thompson is the co-owner of the Newberg Property.

On July 17, 2017, the Court entered default against Defendant Decorative Metal Services.

On July 21, 2017, the Court entered an Order Approving Stipulation Between United States and Washington County in which Washington County was "excused from any further participation in this case."

On July 24, 2017, the Court entered default against Defendant Branceton, Inc.

On April 30, 2018, William Thompson filed an Amended Motion to Compel the Production of Documents that superseded his initial Motion to Compel. On May 7, 2018, William Thompson filed a Second Motion to Compel the Production of Documents.

On June 13, 2018, the Court issued an Opinion and Order in which it denied William Thompson's Motions to Compel on the

ground that he failed to establish that Plaintiff did not timely file this action.

On April 16, 2018, Plaintiff filed a Motion (#70) for Partial Summary Judgment seeking a judgment against William Thompson for his unpaid federal tax liabilities. The Court took Plaintiff's Motion under advisement on May 16, 2018.


## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a genuine dispute as to a material fact. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id*. (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

**DISCUSSION**

Plaintiff moves for partial summary judgment as to its First Claim seeking a judgment against William Thompson for his unpaid federal tax liabilities on the grounds that there is not any dispute of material fact that William Thompson owes the tax liabilities alleged by Plaintiff in the Complaint and that Plaintiff timely filed this matter.

In his Response to Plaintiff's Motion William Thompson states he

> does not contest that he previously had tax liabilities for the years 1999, 2000, 2001, 2002, 2003, and 2004, or that he still has tax liabilities for 1996, 1997, 1998, 2006, and 2013. He likewise does not dispute the amount of the **taxes or penalties** that were due prior to April 9, 2017. He does not contest the right of the IRS to pursue collection of the taxes, penalties, and interest for the years 1996, 1997, 1998, 2006, and 2013.

William Thompson's Resp. at 5 (emphasis in original). William Thompson, however, asserts there is not any interest "due or accrued after April 9, 2017 for the tax years 1999-2004. This is the date the collection period expired." *Id.* Thus, according to William Thompson, Plaintiff filed this action untimely.

**I. The Law**

26 U.S.C. § 6502(a)(1) provides the United States must file an action to collect federal income-tax liabilities "within 10 years after the assessment of the tax." William Thompson asserts in his Amended Motion to Compel that he "filed federal income tax

returns for the years 1999-2004 on April 13, 2007[,]" and those returns "constituted self-assessments as of the same date." Plaintiff filed this action to collect William Thompson's federal income-tax liabilities for those years on May 22, 2017, which is more than ten years after April 13, 2007. According to William Thompson, therefore, this action to collect his federal income-tax liabilities is untimely filed.

The Internal Revenue Code defines "assessment" within the meaning of § 6502(a)(1) as the "recor[d] [of] the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. An "assessment" as used in the Internal Revenue Code is a "'recording' of the amount the taxpayer owes the Government." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004)(quoting 26 U.S.C. § 6203). The assessment is the official record of the amount of a taxpayer's tax liability. *Cohen v. Gross*, 316 F.2d 521, 522–23 (3d Cir. 1963). The Supreme Court explained as early as 1976 that "[t]he 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976)(citing 26 U.S.C. § 6203). The

assessment "consists of no more than the ascertainment of the
amount due and the formal entry of that amount on the books of
the Secretary." *United States v. Dixieline Fin., Inc.*, 594 F.2d
1311, 1312 (9th Cir. 1979). *See also United States v. Hunter
Engineers & Constructors, Inc.,* 789 F.2d 1436, 1436 n.1 (9th Cir.
1986)(same).

Courts that have addressed the issue have held taxes are not
"assessed" for purposes of § 6502 when the taxpayer files his
return, but instead the assessment of federal tax liability by
the IRS "starts the running of" the ten-year limitations period.
*Remington v. United States*, 210 F.3d 281, 284 (5th Cir. 2000).
In *Remington* the plaintiff asserted the IRS did not initiate a
timely collection of his federal tax liability.  The plaintiff
asserted his taxes "were 'assessed' when the return was filed,"
which, according to the plaintiff, was more than ten years before
the United States initiated the action to collect the plaintiff's
tax liability.  The Fifth Circuit rejected the plaintiff's
assertion:

> [I]t is true that the filing of a return starts
> the running of the three-year period within which
> the IRS can *assess* taxes, I.R.C. § 6502(a)(1)
> makes clear that it is the "assessment" itself
> that, once made, [that] starts the running of the
> ten-year period within which the IRS can commence
> efforts to collect an assessed tax.  The law is
> well established that the filing of a return does
> not constitute the assessment of the tax:  "The
> 'assessment,' essentially a bookkeeping notation,
> is made when the Secretary or his delegate
> establishes an account against the taxpayer on the

tax rolls."

*Id.* (quoting *Laing*, 423 U.S. at 170 n.13).

Similarly, in *United States v. Bishop* the plaintiff asserted the date on which the plaintiff filed his tax return "was the 'assessment' that triggered the ten-year statute of limitations." 570 F. App'x 224, 226 (3d Cir. 2014). The Third Circuit rejected the plaintiff's argument:

> Bishop's final argument is that the self-assessment on his filed return triggered the ten-year statute of limitations. A "Self-Assessment" is a term used for when a taxpayer submits documentation of his or her own tax liability, versus when the Secretary determines a taxpayer's liability. *See Kahn v. United States*, 753 F.2d 1208, 1213 (3d Cir.1985)(stating that a self-assessment is in reference to "the amount of tax shown on the return"); 26 U.S.C. § 6201(a)(1)(distinguishing between the taxes assessed by the IRS and the taxes listed on the taxpayer's return). The ability for taxpayers to indicate their own tax liability is "largely the basis of our American scheme of income taxation. The purpose is . . . to get [tax information] with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Comm'r v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944). A self-assessment is completed and submitted by the taxpayer as part of the filing process. *See Jenney v. United States*, 755 F.2d 1384, 1386 (5th Cir. 1985)(referencing that the term "self-assessment" is the amount of tax liability reported on the face of a taxpayer's return). The filing of a tax return is not the same as the assessment of the tax. Finally, "assessment" as referred to in the Internal Revenue Code refers to the Commissioner's final assessment, not the taxpayer's self-assessment.

* * *

> Bishop's claim that the self-assessment date
> should control the statute of limitations is
> unsupported by the Internal Revenue Code.

*Id*. at 227-28 (citations omitted).

The Court adopts the reasoning of *Remington* and *Bishop* and concludes the taxpayer's filing of a return does not constitute an assessment of the tax within the meaning of § 6502 and, therefore, does not begin the running of the ten-year limitations period. The IRS's assessment of an individual's federal tax liability starts the running of the ten-year period within which the IRS can commence efforts to collect an assessed tax.

## II. Plaintiff timely filed this action.

William Thompson asserts in his Response that the IRS's records indicate the IRS prepared Substitutes for Returns (SFRs) for William Thompson for tax years 1999-2004 on April 9, 2007. William Thompson asserts the SFRs began the running of the ten-year limitations period and, therefore, this matter was untimely filed as to those tax years because this matter was not filed until May 22, 2017.

IRS Revenue Officer Suzy Taylor testifies in her Declaration that the IRS's Integrated Data Retrieval System (IDRS) is the method the IRS uses to track and to record taxpayers' accounts. Decl. of Suzy Taylor at ¶ 5. The IDRS reflects William Thompson's account has an entry dated April 9, 2007, with transaction code 150, a transaction amount of $0.00, and the

notation "SFR."  Taylor explains entries with transaction code 150, a transaction amount of $0.00, and an SFR indicate a revenue agent is examining a taxpayer's liability for a tax period in which the taxpayer has not filed a return.  When the revenue agent completes the examination of the taxpayer's liability, the tax assessment is recorded with transaction code 300.

Here William Thompson's account contains an entry on May 28, 2007, with transaction code 300, which indicates the revenue agent made the assessment on May 28, 2007.  The record, therefore, reflects the IRS did not make an assessment until May 28, 2007, which was less than ten years before Plaintiff filed this action on May 22, 2017.  Accordingly, the Court concludes Plaintiff filed this action within the ten-year limitations period.

Moreover, even if the April 9, 2007, $0.00 SFR entry constituted an assessment, it began the running of the ten-year limitations period only for that $0.00 assessment.  The record reflects the IRS made additional substantial assessments related to William Thompson's tax liabilities on May 28, 2007, and later. It is those later substantive assessments that Plaintiff seeks to collect in this action.  Those assessments, therefore, are the relevant assessments for evaluating the start of the ten-year limitations period.  As noted, this action was filed on May 22, 2017, which was less than ten years after the May 28, 2007, and

any later assessments.  Thus, Plaintiff timely filed this action.

**III. William Thompson's Other Arguments**

William Thompson also asserts the Court should not grant
Plaintiff's Motion for Partial Summary Judgment because
(1) Suzy Taylor's Declaration lacks adequate foundation,
(2) Plaintiff failed to introduce evidence of its assessments,
and (3) Plaintiff should be estopped from asserting any
assessment date other than April 9, 2007.

    **A.**    **Suzy Taylor's Declaration**

William Thompson asserts the Court should disregard the
Declaration of Revenue Officer Taylor because "she has no
personal knowledge of the facts of this case."  Plaintiff,
however, introduced Taylor's Declaration to explain the record
the IRS kept regarding William Thompson in the ordinary course of
business.  Taylor states in her Declaration that her "training
and experience as a Revenue Officer have made [her] familiar with
the IRS's computer system for storing and tracking information on
taxpayer's accounts."  Taylor Decl. at ¶ 3.  Taylor's Declaration
establishes the IRS's records are made automatically at or near
the time of the transaction by a person with knowledge of the
transaction or at the direction of a person with knowledge of the
transaction.  Taylor testifies the IRS's records are kept in the
regular course of its business and that the IRS makes and uses
the transaction records as part of its regular business

practices.  Federal Rule of Civil Procedure 54(c)(4) requires only that the declarant have personal knowledge of the facts to which she testifies.  Here Taylor's Declaration reflects she has sufficient personal knowledge of the practices, procedures, and records of the IRS about which she testifies.

Thus, the Court concludes the record reflects Taylor has sufficient personal knowledge to testify about the IRS's policies, procedures, and practices that she addresses in her Declaration and to establish a foundation to admit the IRS's transcripts as business records.

## B.    Evidence of IRS Assessments

William Thompson asserts in his Response that Plaintiff did not introduce the IRS's assessments into evidence and instead merely explained the factual foundation for the assessments.  The record, however, reflects the IRS made the assessments through Certificates of Assessment and Payment.  *See* Decl. of Adam D. Straight, Exs. G-L.  William Thompson does not point to any evidence that establishes the assessments introduced by Plaintiff were improperly made.

On this record the Court concludes Plaintiff has produced sufficient evidence of the IRS's assessments of William Thompson's tax liabilities.

## C.    Estoppel

William Thompson asserts in his Response that the IRS

"filed Substitute for Returns [SFRs] apparently to prevent [William Thompson] from exercising his rights" and that he "relied on [the IRS's] actions and changed the course of his actions in response." Thus, William Thompson asserts Plaintiff should be estoped from asserting any assessment date other than April 9, 2007.

### 1.    The Law

"The doctrine of equitable estoppel . . . is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.'" *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011)(quoting *Collins v. Gee West Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011).  A plaintiff must plead and prove the following elements of equitable estoppel:

> "(1) knowledge of the true facts by the party to be estoped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."

*Id*. (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)).  "[W]hen estoppel is sought against the government, 'there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government.'" *Id*. (quoting *Bolt*, 944 F.2d at 609).

**2.    Analysis**

Even if the $0.00 SFR entries made on April 9,
2007, constituted the "true facts" (*i.e.*, that the SFRs began the
running of the ten-year limitations period on April 9, 2007),
William Thompson does not allege or point to any evidence to
satisfy the other equitable-estoppel factors.  For example, he
does not allege or submit evidence that establishes the IRS
induced him to rely on the SFRs.  Although William Thompson
alleges he detrimentally relied on the SFRs, he does not indicate
the manner in which he detrimentally relied on them nor has he
submitted any evidence to establish that he detrimentally relied
on them.  In fact, he specifically agreed in the Closing
Agreement to the liabilities that are the basis for the IRS's
assessments at issue in this action.  William Thompson also fails
to point to any affirmative misconduct by any government
employee.  William Thompson, therefore, fails to establish that
this Court should apply the doctrine of estoppel.

To the extent that William Thompson asserts this matter
is barred by the doctrine of laches, "it is well settled that the
United States is not . . . subject to the defense of laches in
enforcing its rights."  *United States v. Summerlin*, 310 U.S. 414,
416 (1940).  *See also United States v. Thornburg*, 82 F.3d 886,
893 (9th Cir. 1996)(same); *Hooks v. Int'l Longshore and Warehouse
Union, Local 8*, 72 F. Supp. 3d 1168, 1181 (D. Or. 2014)(same).

In addition, the Supreme Court has made clear that laches is not available when a matter at law is filed within a Congressionally-set deadline. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 963 (2017)("[L]aches cannot be invoked to bar a claim for damages incurred within a limitations period specified by Congress.").

The Court, therefore, concludes this matter is not barred by the doctrine of laches.

In summary, William Thompson has failed to establish that this matter was untimely filed or that a genuine dispute of material fact exists. Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#70) for Partial Summary Judgment on William Thompson's Tax Liabilities.

IT IS SO ORDERED.

DATED this 13th day of June, 2018.

_____/s/ Anna J. Brown_____
ANNA J. BROWN
United States Senior District Judge